UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: Residence of Lew Bettelyoun, more fully described in Attachment A, attached hereto and incorporated by reference. | Case No. 5:18-mj- 146<br><br>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT |

STATE OF SOUTH DAKOTA  )
                                                  )
COUNTY OF PENNINGTON  )

I, Dan Cooper, Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the FBI, in Rapid City, South Dakota. I have been with the FBI since November 1991. I attended and successfully completed the FBI Training Academy in 1991.

2. I affirm that I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), and authorized by law to conduct investigations and make arrests for offenses in Titles 8, 18 and 21 of the United States Code. I am a "Federal law enforcement officer" within the meaning of Fed. R. Crim. P. 41(a)(2)(C) and (b).

3. I submit this affidavit in support of an application for a warrant pursuant to Federal Rule of Criminal Procedure 41, authorizing federal law enforcement officers to search the residence of Lew Bettelyoun, a white single-wide trailer and curtilage located 1.2 miles east of the Pine Ridge CAP Office, approximately ½ mile south of Highway 18, coordinates 43 degrees 01'49.1"N 102 degrees 28'19.1" W (hereafter

referred to as "RESIDENCE PROPERTY"), further described in Attachment A, and believed to hold evidence of violations of 21 U.S.C. §§ 841(a) and 846, Conspiracy to Distribute a Controlled Substance, and 18 U.S.C. § 922(g)(3), Prohibited Person in Possession of Firearm, as well as the identification of individuals who are engaged in the commission of these offenses. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other law enforcement, from my discussions with witnesses, and from my review of records and reports relating to the investigation. Because this affidavit is being submitted for the limited purpose of securing an order authorizing the search of RESIDENCE PROPERTY for the information listed in Attachment B, I have not included details of every aspect of the investigation.

## FACTS IN SUPPORT OF PROBABLE CAUSE

4. I am aware of cameras being mounted at RESIDENCE PROPERTY, allowing occupants of the residence to monitor approaches to the residence. This equipment has been previously observed by law enforcement officers while at the RESIDENCE PROPERTY.

5. Oglala Sioux Tribe Department of Public Safety has issued caution warnings related to dealings with Lew Bettelyoun, due to Bettelyoun indicating that he will have a shootout with officers if they come to his residence to take away his daughter.

6. I and other law enforcement officers have interviewed a witness hereafter identified as Source of Information #1 (SOI#1), who has provided information from December 2015 to August 2018. SOI#1 has been in a relationship with Lew Bettelyoun,

and has children with Bettelyoun. SOI#1 has described a contentious custody battle that is on-going between SOI#1 and Bettelyoun related to their children. SOI#1 has been aware of Bettelyoun selling meth from RESIDENCE PROPERTY since 2016. In 2016, SOI#1's son described (to SOI#1) observing plastic baggies of suspected meth inside of RESIDENCE PROPERTY. While present at RESIDENCE PROPERTY, this juvenile also witnessed meth use by occupants of RESIDENCE PROPERTY, and discussions of meth sales at RESIDENCE PROPERTY. In August 2018, SOI#1 described Bettelyoun as becoming increasingly unstable from his meth use and meth distribution activities. Bettelyoun walks around his residence wearing a ballistic vest and talking about being watched. In August 2018, SOI#1 observed Bettelyoun at RESIDENCE PROPERTY in possession of meth, using meth from a meth pipe, possessing multiple handguns and firearms while under the influence of meth. In August 2018, Bettelyoun offered meth to SOI#1 and advised SOI#1 that he was selling meth and also trading meth for guns. Since April 2018 and into July 2018, Bettelyoun and his sister Melanie Bettelyoun, a/k/a Mel Bettelyoun, have told SOI#1 that Lew Bettelyoun is being supplied meth by Melanie Bettelyoun, who is bringing meth to Lew Bettelyoun at his residence in Pine Ridge. SOI#1 has observed Melanie Bettelyoun repackaging larger quantities of meth into smaller bags. Melanie Bettelyoun has told SOI#1 about receiving meth fronts from her Mexican source of meth, and making $8,000 over a short period of time. SOI#1 further advised that Lew Bettelyoun and Melanie Bettelyoun have talked about collecting money, and delivering and picking up drugs.

7. On March 18, 2016, Alice Hunter was interviewed when she contacted law enforcement regarding meth activity involving her son, Derek Tyon. Hunter told law enforcement about an incident during the week of March 11, 2016, when Lew Bettelyoun threatened Tyon with a shotgun by pointing the gun at Tyon for fifteen minutes while accusing Tyon of being involved in robbing some drugs. Hunter did not personally observe this conduct; it was conveyed to her by Tyon.

8. On March 28, 2016, Melanie Bettelyoun was interviewed by law enforcement while she was incarcerated at the South Dakota Department of Corrections facility in Pierre, SD. Melanie Bettelyoun advised that in 2015 she was getting ounces of meth fronted to her by Trevor Ray. Melanie Bettelyoun was taking some of this meth in 8-ball (3.5 gram) quantities to her brother Lew Bettelyoun in Pine Ridge. Lew Bettelyoun was distributing this meth at his residence, located near Bettelyoun's parent's residence.

9. On June 14, 2016, law enforcement interviewed a witness hereafter referred to as Source of Information #2 (SOI#2). SOI#2 identified Lew Bettelyoun as one of the larger suppliers of meth in the Pine Ridge area, Bettelyoun residing east of Pine Ridge in a trailer house across from Wolf Creek School south of the highway. For approximately a two month time period, SOI#2 estimated purchasing meth from Bettelyoun on 75-100 occasions. SOI#2 described Bettelyoun as always being under the influence of meth and being very aggressive. Bettelyoun has been observed in possession of 7-10 guns at his residence. On one occasion, Bettelyoun struck SOI#2 in the head with a sawed off shotgun. On another occasion, Bettelyoun slammed a gun on a table and threatened to shoot SOI#2 over a drug issue. Bettelyoun hides his guns inside and outside his

4

residence. Bettelyoun was in possession of meth most of the time on his person, and hides a lot of his meth in junk cars around his residence property. SOI#2 described Bettelyoun as making drug runs to Scottsbluff, NE with borrowed cars, and returning large quantities of meth in gym bags.

10. A witness hereafter referred to as Source of Information #3 (SOI#3) provided information to law enforcement from June 2016 to January 2017. SOI#3 has purchased meth from Lew Bettelyoun on 50-75 occasions from 2015 through June 2016. Bettelyoun was bringing large quantities of meth to his residence, and SOI#3 identified sources of meth to Bettelyoun including: unknown source(s) from the Kyle, SD area; from California; from Bettelyoun's sister Mel Bettelyoun; and from Tom Prado. SOI#3 described an occasion when Bettelyoun asked SOI#3 to hide an approximate 8 ounce quantity of meth outside of Bettelyoun's residence. Bettelyoun also has several guns in his possession. Bettelyoun's residence is described as a trailer located east of Pine Ridge, on the south side of the highway, near Bettelyoun's mother's residence. Bettelyoun has several wrecked vehicles around the residence. There are dugouts under the trailer and inside the trailer where Bettelyoun hides guns and drugs. Bettelyoun has indicated he trades meth for vehicle(s).

11. On June 16, 2016, a federal search warrant, authorized by the District of South Dakota, was executed at the RESIDENCE PROPERTY. Seized during this search warrant were drug paraphernalia items to include a bag and a scale that tested positive for meth residue upon analysis by the Rapid City Police Department Evidence Section. A shotgun was also seized, which had been reported stolen and was listed in NCIC as

stolen at the time of the search warrant and seizure of the shotgun. Law enforcement officers observed a bar set up in one of the rooms of the RESIENCE PROPERTY. At the time the search warrant was executed Lew Bettelyoun was present at his residence, and was subsequently interviewed. Bettelyoun admitted distributing meth over several months, and obtaining up to half ounce and pound quantities from Tim Brewer. Bettelyoun advised that Brewer has approached Bettelyoun about a $20,000 debt owed to Brewer by Bettelyoun. Bettelyoun advised that Brewer sent some "Mexicans" to his residence, and Bettelyoun shot a shotgun at them, shooting this shotgun 50 times during this incident.

12.     In July and August 2018 law enforcement interviewed a witness hereafter referred to as Source of Information #4 (SOI#4) under a proffer agreement. SOI#4 described a time period in approximately early 2016 when Lew Bettelyoun approached SOI#4, requesting that SOI#4 sell meth for Bettelyoun. This led to Bettelyoun fronting gram and 8-ball (3.5 grams) quantities to SOI#4, and SOI#4 would sell meth and return money owed to Bettelyoun.

13.     On June 15, 2016, a witness hereafter referred to as Source of Information #5 (SOI#5) was interviewed by law enforcement. SOI#5 described Lew Bettelyoun as someone who SOI#5 could purchase meth from. SOI#5 described an incident in early June 2016 when SOI#5 went to Bettelyoun's residence property a couple miles east of Pine Ridge, to purchase meth from Bettelyoun. Bettelyoun was under the influence of meth at the time, and became confrontational. Bettelyoun shot at SOI#5 with a shotgun during this incident.

14. In July and August 2018, law enforcement began obtaining information from a witness hereafter referred to as Source of Information #6 (SOI#6). SOI#6 identified Lew Bettelyoun as someone who SOI#6 has purchased meth from on approximately 100 occasions. SOI#6 estimated Bettelyoun has provided approximately a pound of meth to SOI#6 in total. SOI#6 has also sold meth for Bettelyoun, and described others who have sold for Bettelyoun, including (SOI#4). SOI#6 knew of Bettelyoun being supplied meth by Monique Mackey, Tom Prado, and a white male from Rapid City. Mackey has advised SOI#6 that Bettelyoun owes her a lot of money for meth.

15. On May 18, 2017, the Oglala Sioux Tribe Department of Public Safety was called to the Lew Bettelyoun residence as Bettelyoun wanted Leslie Horse, his significant other, removed from his residence. Officers responded to RESIDENCE PROPERTY where contact was made with Bettelyoun and Horse. Horse advised officers that Bettelyoun was conducting all of his drug activities from the bar in his "man cave". During this contact, officers observed a bar in one of the back rooms of RESIDENCE PROPERTY, and seized drug paraphernalia items from this location.

16. On July 17, 2018, law enforcement utilized Source of Information #7 (SOI#7) to conduct a controlled purchase of $200 meth from Lew Bettelyoun at RESIDENCE PROPERTY. SOI#7 met with Lew Bettelyoun and Leslie Horse in the east bedroom inside of his residence, and Bettelyoun retrieved meth from the bar in this room to sell to SOI#7. The meth purchased during this controlled buy was analyzed by the Rapid City Police Department Evidence Section and determined to be 1.99 grams methamphetamine.

17. On August 8, 2018, SOI#7 conducted another controlled purchase of $150 of meth from Lew Bettelyoun at RESIDENCE PROPERTY. On this occasion, SOI#7 met with Bettelyoun outside of his residence, as SOI#7 was approaching the residence. The substance purchased was field tested, with a positive indication for methamphetamine. This substance subsequently submitted for lab analysis, results pending.

18. During contacts with SOI#7 in September 2018, SOI#7 advised that Lew Bettelyoun is currently being supplied multiple ounce quantities of meth by an unknown source of meth supply. Bettelyoun is making trips to meet this source of meth supply at an unknown residence near the Rockyford area of the Pine Ridge Reservation. Bettelyoun makes arrangements to meet this source to obtain the ounces, then returns the meth to Bettelyoun's residence. Bettelyoun then breaks the ounces down into "dub" ($20 quantities) and $50 quantities to distribute to individuals selling meth for Bettelyoun. SOI#7 identified three dealers who are currently selling for Bettelyoun.

19. On September 18, 2018, a federal grand jury indicted Lew Bettelyoun for Conspiracy to Distribute a Controlled Substance (methamphetamine). See CR 18-50114. The case is sealed pending Bettelyoun's arrest.

### Modus Operandi of Drug Traffickers

20. During my tenure in law enforcement, I have been involved in numerous investigations of narcotic trafficking organizations involving the distribution of controlled substances and the amassing and concealing of the proceeds of these sales. I have interviewed drug users and dealers regarding the manner in which they operate and have become familiar with their techniques. I have executed search warrants for

vehicles, residence, hotel rooms, as well as search warrants for devices, records, ledgers, and documentation reflecting the sale of controlled substances.

21. Based upon my training and experience, including my direct experience in this investigation, I have developed knowledge regarding practices commonly used by drug traffickers and their organizations, including:

- A. Drug traffickers often maintain, on hand, large amounts of cash (typically U.S. currency) in order to finance their drug distribution activities;

- B. It is common for drug traffickers to secrete contraband (including controlled substances), proceeds of drug sales, and records of drug transactions in secure locations within their residences, in lock boxes/safes and vehicles to conceal them from law enforcement.

- C. Drug traffickers commonly maintain addresses or telephone numbers in books, documents and electronic devices that have memory which include computer hard drives, cellular phones, Global Positioning Systems which reflect names, addresses and telephone numbers of the associates in the trafficking organization.

- D. I also know that individuals involved in the distribution of controlled substances and their associates correspond and communicate using internet, social media, email, cellular phone text messages and that their computers and/or other electronic storage media in their possession may be used to prepare, create, and maintain writings, records, and documents relating to

their activities and associations, including but not limited to the trafficking of controlled substances.

E. Through my own experience and training, I am aware that it is common for narcotics traffickers to utilize cellular telephones to facilitate their drug trafficking activities. I am also aware that in addition to using the telephones for communication purposes, said traffickers may also use the internal memory (such as "phone book" or "notes" functions) of the telephone to store names, identifying information, and contact telephone numbers of individuals involved in said drug-trafficking enterprises, and that certain models of cellular telephone also maintain limited logs of past calls made by that telephone.

F. I am also aware that more people, including drug traffickers, are utilizing "Smart" phones, such as Apple iPhones, and GPS units for travel directions. These GPS units can be standalone devices manufactured for that single purpose or applications used through cellular phones. Many of the "Smart" phones and GPS units are programmed with addresses from around the United States and all a user has to do is enter the address he/she wants to travel to and the "Smart" phones and GPS units will provide a travel route for the user. Besides providing a travel route for the user most of the "Smart phones" and GPS units also automatically keep track of the route the user has taken and will back track the route to the point of origin.

G. Drug traffickers take or cause to be taken photographs and videos of themselves, their associates, their assets, their travels, and their product. That these traffickers usually maintain these photographs and videos in their possession, or within their residences, computers, cellular phones, vehicles, and/or other locations over which they maintain dominion and control;

H. It is generally a common practice for drug traffickers to maintain in their residences and/or other locations over which they maintain dominion and control records relating to their drug trafficking activities. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records (drug ledgers) to show balances due for drugs sold in the past ("pay"), and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers, and keep them immediately available in order to efficiently conduct their drug trafficking business. Such records can be maintained on paper, cellular phones, or other devices.

I. It is a generally common practice for drug traffickers to make use of wire transfers, cashier's checks, and money orders to pay for expenses associated

with services to facilitate their illegal activities. Evidence of such financial transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in a trafficker's residence and/or other locations over which they maintain dominion and control, including cellular phones.

J. I am also aware that a Subscriber Identity Module ("SIM") card is a portable memory chip predominantly used in cellular phones that hold information regarding the cell phone's number, address, book, text messages, and other data. SIM cards can typically be removed from a phone and placed in another phone, retaining its original data. SIM cards usually have a unique number associated with it so that it can be associated with a particular cell phone service provider.

K. Drug dealers keep paraphernalia for packaging, weighing, using and distributing controlled substances and the paraphernalia include, but are not limited to, scales, plastic bags, aluminum foil, paper bindles, zip lock bags and other containers commonly used to package and store controlled substances.

L. Drug distributors frequently trade illegal drugs for stolen property and firearms.

M. Drug distributors frequently possess firearms in the furtherance of their drug activities, such as intimidation or threats.

## *"No Knock" Request*

I request authorization to execute this search warrant without providing prior notice, i.e. "no knock", based on the following circumstances: information contained in this affidavit indicating safety concerns related to the subject of investigation Lew Bettelyoun. This information includes Bettelyoun's statements about being paranoid about people watching him; being armed with firearms; possessing firearms and ballistic vest equipment; and discharging firearms in the course of protecting himself and his property. Further information provided related to Bettelyoun's methamphetamine use and being under the influence of methamphetamine while in the possession of firearms.

## *Request to Serve Day or Night*

I request authorization to execute this search warrant at any time in the day or night based on the following circumstances: information contained in this affidavit indicating safety concerns related to the subject of investigation Lew Bettelyoun. This information includes Bettelyoun's statements about being paranoid about people watching him; being armed with firearms; possessing firearms and ballistic vest equipment; and discharging firearms in the course of protecting himself and his property. Further information provided related to Bettelyoun's personal methamphetamine use and being under the influence of methamphetamine while in the possession of firearms. Additionally, information provided related to subject Bettelyoun's acquisition of larger quantities of meth during routine transactions which may occur at any hour of the day/night; and the concealment of these drugs.

*Request to Seal*

I request an order sealing this case until further order of the Court, in that this search is being conducted as part of an ongoing federal criminal investigation and contains information from persons cooperating with law enforcement on this case and others. Disclosure of information contained in the documents incorporated in this search and filed with the Court could seriously jeopardize ongoing investigations.

## CONCLUSION

22. I submit that based on the facts set forth in this affidavit, there is probable cause to believe the RESIDENCE PROPERTY contains evidence, fruits, and or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846 as well as 18 U.S.C. § 922(g)(3). Therefore, I request permission to search the RESIDENCE PROPERTY for the evidence, fruits, and instrumentalities identified with particularity in Attachment B.

23. Based on the foregoing, I request that the Court issue the proposed search warrant.

_____
Dan Cooper, Special Agent
Federal Bureau of Investigation

Sworn to before me and: ☑ signed in my presence.
☐ submitted, attested to, and acknowledged by reliable electronic means.

this 28th day of September, 2018.

_____
Daneta Wollmann
United States Magistrate